**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| **LEONARD HANKINS,** ) | |
| ) | |
| Plaintiff, ) | Case No. CV 06-03764 AJW |
| ) | |
| v. ) | MEMORANDUM OF DECISION |
| ) | |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner of the Social** ) | |
| **Security Administration,** ) | |
| ) | |
| Defendant. ) | |
| ) | |

Plaintiff filed this action seeking reversal of the decision of the defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for disability insurance benefits and supplemental security income ("SSI") benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

Plaintiff filed his applications for benefits on October 16, 2001, alleging that he had been disabled since March 28, 2000 due to hypertension, hypercholesterolemia, stomach pain, poor vision, poor hearing, poor memory, inability to stand for long periods, right arm pain, and left elbow pain. [JS 21]. On May 18, 2005, Administrative Law Judge Theodore Gotsch issued a written decision denying benefits. [Administrative Record ("AR") AR 20-27]. The ALJ found that plaintiff retained the residual functional capacity ("RFC") to perform light work requiring only occasional postural changes, less than moderate

exposure to power tools, and work that involved only simple, repetitive tasks. [AR 26]. The ALJ found that plaintiff's RFC precluded performance of plaintiff's past relevant work, but that he could perform alternative jobs that exist in significant numbers in the national economy. [AR 26 ]. The ALJ therefore concluded that plaintiff was not disabled at any time up to the date of his decision. The Appeals Council denied plaintiff's request for review. [AR 6-8].

**Standard of Review**

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or if it is based on the application of incorrect legal standards. Ukolov v. Barnhart, 420 F.3d 1002, 1004 (9th Cir. 2005); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is more than a mere scintilla but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971); Thomas, 278 F.3d at 954. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (quoting Consolidated Edison Co. of New York v. N.L.R.B., 305 U.S. 197, 229 (1938)); Thomas, 278 F.3d at 954. The court is required to review the record as a whole, and to consider evidence detracting from the decision as well as evidence supporting the decision. Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir.1999)).

**Discussion**

**RFC finding**

Plaintiff challenges the adequacy of ALJ's RFC finding. [JS 3-6]. He contends that "[t]he record taken as a whole would support a more restrictive RFC than found by the ALJ." [JS 4]. The controlling issue, however, is not whether the record could support a more restrictive RFC, but whether the ALJ's RFC finding is based on substantial evidence and free of legal error.

Plaintiff argues that he has been treated for neuroma[1] involving both feet, and that one the

---

[1] Neuroma is a general term for any neoplasm (an abnormal new growth of tissue) derived from cells of the nervous system. Stedman's Medical Dictionary neuroma, neoplasm (27th ed. 2000)

Commissioner's consultative examiners, Dr. Lee, observed that plaintiff had a slow gait. [AR 282]. To be more precise, Dr. Lee remarked that plaintiff "is able to ambulate with a slow, normal gait without a limp by himself." [AR 282]. Dr. Lee also opined that plaintiff can stand or walk for six hours in an eight-hour day. [AR 282-283]. The Commissioner's other consultative examiner, Dr. Enriquez, also opined that plaintiff retained the RFC for light work. [AR257].

Plaintiff argues that "the objective findings belie" the conclusion that plaintiff can perform light work [JS 4], but he has not identified any of the objective findings that he contends contradict the consultative examiners' conclusions. Podiatry treatment records for the period March 11, 2002 through July 1, 2002 from Universal Care Medical Group indicate that plaintiff complained to his doctor of pain and a burning sensation in his feet. [AR 302, 305, 209, 313, 316]. Tinel's sign was not consistently positive.[2] The diagnosis was neuroma. [AR 305, 309]. In April 2002, plaintiff postponed having his right-foot injected with cortisone, which had relieved "close to 100%" of the burning sensation in his left foot, because he had a lot of driving to do. [AR 313]. Plaintiff later received additional injections and reported that they worked well, at least in the short term. [AR 305, 309].

In October 2003, more than a year after plaintiff's last documented podiatry visit, his podiatrist signed a disability certification form stating that plaintiff could not perform "extended" standing or walking. [AR 302]. No supporting diagnoses or findings of any kind were recorded on that form. See Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005)(noting that "an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings"). The ALJ noted that plaintiff did not consistently complain of foot pain and had not sought significant treatment for that problem after his course of podiatry treatment in 2002. [AR 22]. The ALJ permissibly rejected the unsupported treating source assessment. See Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir.1995)(explaining that controverted treating source opinions may be rejected for specific, legitimate reasons based on substantial evidence in the record).

---

[2] "Tinel's sign" occurs when pain, tingling or a shock-like sensation are produced distal to the injury, along the nerve distribution, as a result of percussing a peripheral nerve over the area of injury, and is significant for peripheral nerve injury due to trauma, compression, and similar conditions. Dan J. Tennenhouse, M.D., J.D., F.C.L.M., Attorneys' Medical Deskbook 3d § 11:2 (2002).

Plaintiff also contends that the ALJ erred in adopting the assessments of the consultative psychiatrists and the non-examining state agency physician that plaintiff can perform simple, repetitive tasks. [See AR 22, 248-251, 258-264, 265-269, 285-290]. Plaintiff argues that since the same doctors also opined that plaintiff would have mild to moderate limitations in concentration, persistence, and pace, the ALJ wrongly relied on their conclusions that plaintiff can perform simple, repetitive work. The examining and non-examining doctors concluded that plaintiff had some deficits in concentration, persistence, and pace, but not enough to bar performance of simple, repetitive tasks. [See, e.g., AR 290 ("The claimant would be able to maintain adequate pace doing simple work . . . .")]. The Commissioner requested that the psychiatrist who treated plaintiff briefly in 2001 complete a medical source questionnaire, but no response was received, and therefore the record did not contain any treating source assessment. [See AR 263].

Plaintiff's argument is unpersuasive. The ALJ did not impermissibly disregard, or omit from his hypothetical question, mild to moderate deficiencies in concentration, persistence, and pace specified by the examining and non-examining doctors who also opined that plaintiff could perform simple, repetitive work. See Thomas, 278 F.3d at 953-955, 958 (affirming the ALJ's finding that a claimant who had "moderate mental residual functional capacity limitations" and a "marked limitation in her ability to maintain concentration over extended periods" could perform unskilled work because those jobs are very simple and do not require sustained concentration). The ALJ's mental RFC finding is supported by substantial evidence and is free of legal error.

**Credibility evaluation**

Plaintiff contends that the ALJ did not make proper credibility findings.

Once a disability claimant produces evidence of an underlying physical or mental impairment that is reasonably likely to be the source of his or her subjective symptoms, the adjudicator is required to consider all subjective testimony as to the severity of the symptoms. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); see also 20 C.F.R. §§ 404.1529(a), 416.929(a) (explaining how pain and other symptoms are evaluated). Although the ALJ may then disregard the subjective testimony he considers not credible, he must provide specific, convincing reasons for doing so. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001); see also Moisa, 367 F.3d at 885 (stating that in the absence of evidence of malingering, an ALJ may not dismiss the subjective

testimony of claimant without providing "clear and convincing reasons"). The ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa, 367 F.3d at 885; see Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997) (enumerating factors that bear on the credibility of subjective complaints); Fair v. Bowen, 885 F.2d 597, 604 n.5 (9th Cir. 1989)(same). If the ALJ's assessment of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

Plaintiff testified that he had a long history of substance abuse. He said he had sober for the past seven years but had relapses every few months. He claimed that he could not work due to pain in his feet, shoulders, stomach, and finger, and because he had "mental problems" that caused him to have no patience, even for a simple job. Plaintiff testified that he took medication for his symptoms and that his medication helped, but he denied that his symptoms were controlled well enough to work. [AR 576-585].

The ALJ permissibly rejected plaintiff's testimony regarding the alleged severity of his subjective complaints as well as the third-party questionnaires submitted by plaintiff's wife and mother. The ALJ noted that plaintiff's treatment history was not consistent with his allegations of disabling pain and other subjective symptoms. Plaintiff received limited mental health treatment in 2000 and 2001, with a lengthy gap between treatment visits. [See AR 21, 233-239, 242-247]. He received podiatry treatment for neuroma in 2002, but the record did not document consistent or ongoing treatment for foot problems since that date. He received care in 2004 for a ganglion cyst, trigger finger, well-controlled hypertension, and tendonitis, but the ALJ observed that his treatment was essentially routine. [AR 22-23]. In addition, the ALJ noted that plaintiff treated his allegedly debilitating pain only with ibuprofen and Prevacid. [AR 23]. Plaintiff's failure to seek or obtain treatment commensurate with the alleged severity of his symptoms is a valid reason for rejecting his subjective complaints. See Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (explaining that the ALJ properly considered, as part of his credibility evaluation, the treating physician's failure to prescribe, and the claimant's failure to request, medical treatment commensurate with the "supposedly excruciating" pain alleged); Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (holding that the ALJ properly discounted subjective complaints in view of a three-year gap in treatment and the treating

1  physician's reliance on conservative treatment).

2        Plaintiff testified that he could only walk or stand for a few minutes at a time and spent much of the day lying down, but the ALJ concluded that plaintiff's testimony was exaggerated because there was no evidence of the muscle atrophy that would be expected to accompany such extreme inactivity. See Osenbrock v. Apfel, 240 F.3d 1157, 1166 (9th Cir. 2001)(holding that the ALJ's reliance on the lack of evidence of disuse muscle atrophy constituted a clear and convincing reason, among others, for discrediting the claimant's "excess symptom" testimony). The ALJ also observed that the subjective complaints plaintiff reported to the treating and examining doctors were not consistent with the disabling symptoms he alleged in support of his disability claim. [AR 23]. See Morgan, 169 F.3d at 599-600 (holding that the claimant's inconsistent reports of activities to different doctors, and inconsistencies between the claimant's complaints and observations of medical sources, supported the ALJ's negative credibility evaluation).

      The ALJ carefully discussed the statements made by plaintiff's wife and mother in their written questionnaires. [AR 23]. Plaintiff's wife said that her husband could take care of his personal needs, cleaned the bathroom (albeit not to her satisfaction), attended church regularly, could go out without help, and visited others twice a week. She also said that he slept most of the time, did minimal activities around the house, and sometimes hit things or fell into a "rage." The ALJ rationally concluded that plaintiff's wife's statements, even if taken at face value, did not credibly establish that plaintiff had disabling mental or physical impairments. In addition, the ALJ commented that plaintiff did not testify that he had problems with anger management or frequent urination. Plaintiff's mother said that her son cannot sleep, cares for his own personal needs, does no household chores, leaves the home daily, enjoys going to church, plays dominoes, watches television, has a poor memory, and "hears voices." The ALJ permissibly determined that her statements also failed to demonstrate that plaintiff was physically or mentally unable to work. [AR 23]. The ALJ adequately considered and explained his evaluation of the lay witnesses' written statements. See Lewis v. Apfel, 236 F.3d 503, 510-512 (9th Cir. 2001) (holding that the ALJ did not err where he expressly disregarded the claimant's family members' testimony and provided at least "arguably germane" reasons for rejecting that testimony, even though he did not clearly link his determination to those reasons).

///

///

6

///

**Conclusion**

For the reasons stated above, the Commissioner's decision is supported by substantial evidence and is free of legal error. Accordingly, the Commissioner's decision is **affirmed.**

**IT IS SO ORDERED.**

DATED: October 12, 2007

/ s /
_____
ANDREW J. WISTRICH
United States Magistrate Judge